# EXHIBIT A

## SUMMONS - CIVIL

JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**See other side for instructions**

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☐ "X" if claiming other relief in addition to or in lieu of money or damages.

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov



MAR 19 2021

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 123 Hoyt Street, Stamford, CT 06905 | ( 203 ) 965-5308 | April     13 , 2021 |

| ☒ Judicial District  ☐ Housing Session | ☐ G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) Stamford | Case type code (See list on page 2) Major: M   Minor: 90 |
|---|---|---|---|

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) Ashling Soares Law, 55 Greens Farms Road, Suite 200-58, Westport, CT 06880 | Juris number (to be entered by attorney only) 439883 |
|---|---|
| Telephone number (with area code) ( 203 ) 529-5115 | Signature of Plaintiff (If self-represented) |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | ☒ Yes  ☐ No | Email address for delivery of papers under Section 10-13 (if agreed to) asoares@ashlingsoareslaw.com |
|---|---|---|

Number of Plaintiffs: 1     Number of Defendants: 1     ☐ Form JD-CV-2 attached for additional parties

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: Lauren Torres<br>Address: 120 Spring Street, Mount Kisco, New York 10549 | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: Wells Fargo, via Secretary of State (C.G.S. 33-633, 52-59b) 33-929sec<br>Address: 30 Trinity Street, Hartford, CT, 06106 | D-01 |
| Additional Defendant | Name:<br>Address: | D-02 |
| Additional Defendant | Name:<br>Address: | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

### Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court  ☐ Assistant Clerk | Name of Person Signing at Left Ashling M. Soares, Esq. | Date signed 03.09.21 |
|---|---|---|---|

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

*For Court Use Only*
File Date

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

ATTEST:
A TRUE AND ATTESTED COPY
GEORGE E. CHRISTIANSEN
CT STATE MARSHAL

RETURN DATE: APRIL 13, 2021

-----------------------------------------------------------------------x

| | | |
|---|---|---|
| LAUREN TORRES | : | SUPERIOR COURT |
| | : | |
| Plaintiff, | : | |
| | : | J.D. OF STAMFORD/NORWALK |
| v. | : | |
| | : | AT STAMFORD |
| WELLS FARGO | : | |
| | : | |
| | : | |
| Defendants. | : | MARCH 9, 2021 |

-----------------------------------------------------------------------x

COMPLAINT

Lauren Torres, by and through counsel, hereby states her Complaint against Defendant Wells Fargo as follows:

PARTIES

1. Lauren Torres ("Plaintiff" or "Torres") is a female resident of the State of Connecticut and resides at 120 Spring Street, Mount Kisco, New York 10549.

2. Defendant Wells Fargo ("Wells Fargo") is a bank, with an office located at 137 West Putnam Ave, Greenwich, Connecticut 06830, where Plaintiff was working as a Regional Banking District Manager.

FACTS

ATTEST: [signature]
A TRUE AND ATTESTED COPY
GEORGE E. CHRISTIANSEN
CT STATE MARSHALL

1

1. Plaintiff was first hired by Wells Fargo in June 2006 as a Part-Time Teller. Once hired, she quickly climbed the ladder, starting with her first promotion in September 2006 to Lead Teller, after which she was promoted eight (8) additional times, until she eventually landed the role of Regional Banking District Manager in January 2016.

2. In 2015, a class action lawsuit was filed against Wells Fargo, based on the opening of "fake accounts" without customer consent, actions which were in large part attributable to the immense pressure put on team members to increase sales. *Jabbari v. Wells Fargo & Co.*, 2015 U.S. Dist. LEXIS 192599. The case eventually settled, ("the Jabbari Settlement") and as a result, an initiative titled "Raise your Hand" was introduced. The goal of this initiative was to tackle the high-pressure sales culture that had previously existed, causing team members to act unethically in order to meet sales quotas. After its commencement, however, some team members began utilizing the movement to target leaders and attempt to secure their termination.

3. In July 2017, Senior Leadership restructuring began, at which time the Region President and Area President roles were consolidated into a newly created Region Bank President Position, and as a result, Ms. Torres' Area President, Maria Ferreira, was displaced from Wells Fargo. In August 2017,

2

Kent McClun ("Mr. McClun") became the Region Bank President for Connecticut Community Bank, making him her direct manager.

4. Shortly thereafter, in November 2017, Mr. McClun questioned Ms. Torres about false allegations that had been made about her. Subsequently, Ms. Torres notified the Human Resources department ("HR") that she was being retaliated against by Mr. McClun, and that several Branch Managers directly reporting to her ("Direct Reports") – Irmina Oziembala ("Ms. Oziembala"), Christina Lagatta ("Ms. Lagatta"), and Jayson Bortot ("Mr. Bortot") – were conspiring to make anonymous false allegations against her, in an attempt to secure her termination. An HR representative indicated to Ms. Torres that several team members appeared to have "an axe to grind" and were "choosing to grind their axes" on her. During that time, the HR representative also noted that roughly 70% of all allegations called in to HR are not true and/or substantiated and that they wished that people only called in factual allegations.

5. In June 2018, Mr. McClun placed Ms. Torres on administrative leave, pending an investigation of four branch managers' allegations of retaliation, stemming from a corrective action she had taken towards them. It should be noted that this corrective action, delivered to Ms. Oziembala, Ms.

Lagatta, Andrew Yee ("Mr. Yee"), and John Kane ("Mr. Kane"), had been recommended by HR and approved by Mr. McClun beforehand.

6. Plaintiff was permitted to return to work in October 2018, after it was concluded that none of the allegations were substantiated. However, Mr. McClun then placed her on a "Final Notice" for allegedly violating the Workplace Professional Conduct Policy, and rescinded the corrective action that she had implemented. This action sent a clear message that a retaliation claim is the key to reversing a corrective action, which diminished Ms. Torres' ability to hold her Direct Reports to the Company's policies and performance objectives.

7. From October 2018 to November 2018, Mr. McClun continually undermined the Plaintiff's supervisory role by not allowing her to visit branches without being under the observation of a partner, creating the perception that she needed supervision.

8. In November 2018, Plaintiff's assigned partner had scheduling conflict, leaving her no choice but to enter the branch by herself. Upon her arrival, the team members called their branch manager, Ms. Lagatta (who was on maternity leave), to notify her of Ms. Torres' unaccompanied presence, after which Ms. Lagatta alerted Mr. McClun. Mr. McClun then called Ms. Torres and ordered her to leave the branch immediately, forcing her to work for the

remainder of the day in a Donut Delight coffee shop down the street. When this came to the attention of HR, Mr. McClun was told that he could not prohibit Ms. Torres from performing her role and that, therefore, she needed to be permitted to enter branches without accompaniment. However, also during this time period, Mr. McClun required Ms. Torres to send calendar invites to the branch managers for all in-field coaching activities, a task which no other District Manager was required to do, and which created a perception that she was not supposed to be in the branches without prior notification. This was not only retaliatory behavior, but also a hindrance to Ms. Torres' ability to perform her job.

    9.    In December 2018, Mr. Kane resigned to accept a Branch Manager position at Chase Bank. One month later, in January 2019, Mr. Yee resigned to accept a Branch Manager position at TD Bank. Shortly thereafter, Ryan Muir, HR Business Partner, held a meeting with Plaintiff's Direct Reports to discuss their concerns regarding her, resulting in what was referred to as the "Southwest Connecticut District Action Plan" ("the Plan"). As part of the Plan, Mr. McClun was instructed to review Ms. Torres' progress in addressing her Direct Reports' concerns during a bi-weekly, thirty-minute call. However, between mid-February and mid-May 2019, Mr. McClun convened only a total of four (4) calls with Ms. Torres.

10. In March 2019, Plaintiff and Mr. McClun delivered an "Informal for Conduct" action towards Mr. Bortot, after he yelled at her and her Retail Small Business Credit Partner, and exhibited aggressive and intimidating behavior (e.g. lunging over the desk). Mr. Bortot was also subsequently given a "Formal for Performance" action after he left the vault door open on a Saturday, and was then dishonest when questioned by the Regional Services Consultant partner, Lisa Micalizzi.

11. On or about June 13, 2019, Mr. McClun held a meeting titled "Credit Strategy Discussion - RBP/DM/RSBC/ASL - Southwest Connecticut", with the Plaintiff, Affluent Segment Leader Dionne Lloyd ("Ms. Lloyd"), and Retail Small Business Credit Consultant, Trish Flynn ("Ms. Flynn"). Prior to the meeting, Mr. McClun sent a meeting agenda, in which he requested that Ms. Torres assess: a) the level of skill of the manager/service manager to lead the team, b) the skill-set of the bankers/tellers, c) the engagement of the team members, d) whether the managers are able to coach and if the team members are coachable, and d) the level of credit acumen and interactive effectiveness of the managers and bankers. He also asked her to complete an Excel spreadsheet that had been created by one of the Connecticut District Managers, Jeff Bruneau. The Plaintiff had refused to complete the spreadsheet, on the basis that Wells Fargo employees were not permitted to

create their own reporting tools, per Mary Mack, Head of Consumer Banking at Wells Fargo.

12.    After that, on or about June 15, 2019, in an email to the Plaintiff, Ms. Flynn requested the names of two "high-potential" branches. Ms. Torres immediately called Ms. Flynn to inquire about the reason for this request. Ms. Flynn stated that her manager, Barbara Bonfiglio ("Ms. Bonfiglio"), had asked for two branches per district that they would target for coaching purposes. In response, Ms. Torres indicated that she would not comply, since the strategy was not in alignment with their business process of coaching each team and team member equally, regardless of skill or potential. She told Ms. Flynn that she would explain to whomever she needed to, her rationale for not providing the names of two branches that were "high potential", which was her belief that all branches were "high potential." It should be noted that Wells Fargo prohibits "stack ranking" team members or branches based on actual sales/growth/performance outcomes, a policy change that was initiated after the Jabarri Settlement in September 2016.

13.    On or about June 17, 2019, Mr. McClun requested the Plaintiff's personal email address, so that he could AirDrop a video that he had made for all Connecticut District Mangers to show to their branch managers, outlining plans for him, the District Managers, the Affluent Segment Leader, and the

Retail Small Business Credit Consultants to collectively visit all of the branches in each district, to further the "Credit Strategy". Mr. McClun then instructed Ms. Torres and the other District Managers to plug their personal cell phones into their corporate laptops to play the video that he had made. Ms. Torres indicated that she would not be providing her personal email address, because she was uncomfortable with the request, and because employees are not permitted to use their personal cell phones for business purposes. Without Ms. Torres' consent, Mr. McClun proceeded to AirDrop the video to her, but Ms. Torres refused to plug her personal cell phone into the corporate laptop computer to play the video for her branch managers.

14.  On June 19, 2019, Mr. McClun instructed all of the district managers to complete a spreadsheet that Annie Govan (an administrative assistant), had created to input the performance ratings in each of the mid-year performance rating categories (Leadership, Team Member Experience, Customer Experience, Growth and Risk Management) for an upcoming meeting that he was holding with the Plaintiff and the other six district managers in Connecticut. The purpose of the spreadsheet to "calibrate" their ratings of each of their Direct Reports. In her response to Mr. McClun's instructional email, Ms. Torres indicated that she did not feel comfortable inputting the ratings for her branch managers into the

spreadsheet because they are prohibited from making or using their own tools, tracking sheets, etc., and that she was concerned about the possible outcome of doing so. When she arrived at the "calibration" meeting with her Direct Reports, Mr. McClun instructed his administrative assistant, Alberta Selmani ("Ms. Selmani"), to input Ms. Torres' ratings (which she had relayed in an email), into the unapproved spreadsheet. Mr. McClun then proceeded to discuss Ms. Torres' ratings in front of all of the meeting attendees. It should be noted that the district managers, Ms. Torres included, did not have a "business need to know" for the ratings of each other's branch managers, rendering the action in direct violation of the "confidentiality/ business need to know" policy, found in Wells Fargo's handbook. Soon after, on June 24, 2019, Ms. Torres discovered that she had been cropped out of the photo used in the "CT Fact Sheet" to be shared with the public, which highlighted Wells Fargo's achievements in the community.

15. Then, on or about August 8, 2019, during a one-on-one meeting with Ms. Oziembala, observed by Mr. McClun, she yelled at the Plaintiff, "You were under investigation, you were under investigation... You need to respect me. I am four years older than you and I have a Master's Degree!" Mr. McClun then interjected, "I think you are both very similar (referring to Ms. Torres and Ms. Oziembala), and people that are similar don't get along." This

9

statement both undermines Ms. Torres and implied that Ms. Oziembala's disrespectful and unprofessional conduct was excusable. Then, later that day, when Ms. Torres expressed her concern about Ms. Oziembala's conduct to Mr. Clun, as well as his statement about why they didn't "get along", he stated that he didn't realize that Ms. Oziembala had been conducting herself unprofessionally or disrespectfully.

16. Shortly thereafter, the Plaintiff received her 2019 Mid-Year Performance Review ("the Review"), in which Mr. McClun failed to include any of the mandatory performance ratings. Instead, he stated, "She can be hesitant in addressing certain issues due to concern of additional complaints filed against her. I have coached Lauren that if she is doing the right activities and follow -up, that is her role and should continue to be focused on supporting the team around our specific priorities." Ms. Torres informed Mr. McClun that she disagreed with these statements, since she had in fact held one of her direct reports accountable through an "Informal Warning for Conduct" and "Formal Warning for Performance", both of which Mr. McClun was aware and present for the delivery. Moreover, Mr. McClun never reviewed or requested to review Ms. Torres' coaching notes. Had he reviewed her notes, he would have seen that she had very specific commitments from her Direct Reports and that she did follow up on them via monthly branch visits,

monthly one-on-one meetings and other frequent touchpoints. Mr. McClun also stated in the Review, "She [Lauren] still struggles in having courageous conversations around branch manager's activities, addressing performance gaps in team member performance, due to her concern around additional ER (Employee Relations) cases being filed or team members raising their hand." This statement is both speculative and false. Ms. Torres informed Mr. McClun that this is not true and that she does have coaching conversations with all of her Direct Reports regarding their performance, as well as the activities and results of their performance. When she clarified this with Mr. McClun, he claimed that he relies on partner feedback and therefore wrote that based solely on the latter (which, notably, should not be included in a performance review). Importantly Mr. McClun observed Ms. Torres on merely three occasions, two of which were at her request.

17. On or about August 22, 2019, Plaintiff received a call from an Internal Investigator, Sandra Phipps ("Ms. Phipps"), questioning her about her "District Credit Strategy". Ms. Torres told Ms. Phipps that she was called to a meeting by Mr. McClun along with the Affluent Segment Leader and the Retail Small Business Segment Leader in June 2019. She told Ms. Phipps that she didn't feel comfortable with Mr. McClun asking her to use a ranking spreadsheet that was not approved at the enterprise level, or with coaching

team members to push credit products to customers. She told her that she had told Mr. McClun that she wasn't willing to use the prohibited spreadsheet. It should be noted that Mr. McClun asked Ms. Torres to participate in the same unethical sales practices that led to the Jabbari Settlement. Ms. Phipps asked Ms. Torres if there was anything else that Mr. McClun had requested that she do that made her feel uncomfortable. Ms. Torres informed Ms. Phipps that Mr. McClun had asked her to violate their sales and service quality guidelines, and technology/information security guidelines.

18. On September 9, 2019, and again on September 19, 2019, Plaintiff spoke with Employee Relations ("ER") Consultant Christel Laney ("Ms. Laney") about the false allegations against her. During that conversation, she discussed her concerns with the investigations process, which facilitated the submission of false allegations based on ulterior motives.

19. Then, or about October 11, 2019, Plaintiff submitted her concerns to Employee Relations. During the following week, on October 15, 2019, Ms. Torres spoke with Mr. McClun about her conversation with Ms. Phipps. During that conversation, Mr. McClun informed her that the reportedly "anonymous" allegation was from Ms. Oziembala, who claimed that Ms. Torres instituted an unapproved strategy for credit conversations with customers, and that you had called her to notify her that the strategy was unapproved. Ms. Torres

responded with her concerns about the investigation process, noting that her impromptu interrogation, without time to review the allegations or any information about the source of the allegations, prevented her from being able to effectively respond to, or provide context regarding, the allegations. Notably, in a previous conversation with Mr. McClun about the false allegations against Ms. Torres, he had agreed with her that the source of any allegation has a crucial bearing on its credibility, and that if any allegations were made against her by Ms. Oziembala or Ms. Lagatta, he would discredit them as being solely based on their desire for her to be terminated. When Ms. Torres told Mr. McClun that she suffered from anxiety about the investigation because she had not received any follow-up, Mr. McClun stated that he had a similar experience when he was investigated by ER for false allegations.

20. In early November 2019, Mr. McClun rescinded the Formal Warning that Mr. Bortot had been placed on in May 2019, purportedly because ER had not taken sufficient notes when Ms. Torres reviewed his misconduct with them, and because Ms. Laney felt that the action should have been an "Informal", rather than a "Formal", Warning. In response, the Plaintiff expressed her concerns to Mr. McClun regarding the disparity among ER consultants' recommendation. She also pointed out that, by rescinding the corrective action instead of modifying it, team members were being taught to

report false allegations to ER, in order to achieve the rescission of corrective actions.

21. On November 13, 2019, the Plaintiff's employment with Wells Fargo was abruptly terminated, based on an alleged violation of the Company's "business need to know" policy. When Ms. Torres inquired about the alleged violation, neither Mary Evans (Senior Vice President Regional Human Resources Director) nor Mr. McClun provided *any* information, and instead directed her to contact Employee Relations. Ms. Torres was shocked by this response, given that she was well aware that an employee's superior is always given the investigation details and the authority to determine the next steps (e.g. corrective action or termination). Importantly, during the termination meeting, Mr. McClun stated to Ms. Torres, "You should have just done your job", implying that she shouldn't have been a whistleblower and should have instead stayed quiet about the unlawful and unethical actions that he was asking her and her peers to perform. When Ms. Torres contacted HR for more information, she was was told that Mr. McClun would have the details regarding the reason for her termination. To date, Ms. Torres has not obtained any information regarding the alleged cause for her termination.

22. On or about December 15, 2019, the Plaintiff had filed a wrongful termination case, alleging that she was terminated from her employment in

retaliation for participating in a fact-finding finding investigation with ER/HR in that she reported to Ms. Phipps Mr. McClun's instructions to engage in unlawful and unethical conduct.

23. Plaintiff has been unable to obtain comparable employment since her termination from Polk, despite reasonable and diligent efforts. Unemployment has damaged Plaintiff's financial stability dramatically.

## COUNT ONE: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

1-23. Allegations 1-23 of the Complaint are re-alleged as if fully set forth herein.

24. Plaintiff was an "internal whistleblower" under Connecticut law, in that she reported misconduct of a fellow employee or superior to a supervisory authority within the company.

25. As a direct and proximate result of Plaintiff's whistleblowing activities, Defendant terminated Plaintiff's employment.

26. Defendant's termination of Plaintiff's employment violates an important public policy, the avoidance of fraud through internal mediums.

26. Plaintiff is without statutory remedy for her internal complaints pertaining to the conduct of Defendant, her former employer.

DEMAND FOR RELIEF

WHEREFORE, the Plaintiff demands that a judgment be entered in her favor against the Defendant for the following relief:

1. Compensatory damages for both the pecuniary and nonpecuniary losses suffered by the Plaintiff;

2. Punitive damages as allowed under the law;

3. Attorney's Fees as allowed under the law; and

4. Costs as allowed under the law;

5. Any and all other relief in equity or law that the Court deems appropriate.

The Plaintiff,

Lauren Torres

By: /s/Ashling M. Soares, Esq.

Ashling M. Soares, Esq.
Ashling Soares Law
55 Greens Farms Road
Suite 200-58
Westport, CT 06880
Ph: 203.529.5115
F: 203.529.5115
Juris No.: 415476

ATTEST:
A TRUE AND ATTESTED COPY
GEORGE E. CHRISTIANSEN
         MARSHAL   16

RETURN DATE: APRIL 13, 2021

---------------------------------------------------------------x

| | | |
|---|---|---|
| LAUREN TORRES | : | SUPERIOR COURT |
| Plaintiff, | : | |
| | : | J.D. OF NEW BRITAIN |
| v. | : | |
| | : | AT STAMFORD |
| WELLS FARGO | : | |
| | : | |
| Defendants. | : | MARCH 9, 2021 |

---------------------------------------------------------------x

STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of costs and interest, is greater than FIFTEEN THOUSAND ($15,000.00) DOLLARS.

                                                 The Plaintiff,

                                                 Lauren Torres

                                                 By: /s/ Ashling M. Soares, Esq.
                                                 Ashling M. Soares, Esq.
                                                 Ashling Soares Law
                                                 55 Greens Farms Road
                                                 Suite 200-58
                                                 Westport, CT 06880
                                                 P: 203.529.5115
                                                 F: 203.529.5115
                                                 asoares@ashlingsoareslaw.com
                                                 Juris No.: 439883

ATTEST: *[signature]*
A TRUE AND ATTESTED COPY
GEORGE E. CHRISTIANSEN
CT STATE MARSHALL

17